**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **MIGUEL YANSEL CASTILLO FORNARIS,** | ) | |
| **Petitioner,** | ) | |
| **v.** | ) | **Case No. CIV-26-1493-HE** |
| **TODD BLANCHE, et al.,** | ) | |
| **Respondents.** | ) | |

**<u>REPORT AND RECOMMENDATION</u>**

Petitioner Miguel Yansel Castillo Fornaris, a citizen of Cuba proceeding *pro se*,[1] filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Petition") challenging his detention by U.S. Immigration and Customs Enforcement ("ICE"). (Doc. 6).[2] United States District Judge Joe Heaton referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (C). (Doc. 4). Respondents filed a Response, (Doc. 11), and Petitioner filed a Reply, (Doc. 12). At the Court's direction, Respondents then filed a supplemental response. (Docs. 15, 16). Petitioner has since moved for an extension of time to reply to the supplemental response.

---

[1] A *pro se* litigant's pleadings are liberally construed "and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *see Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). But the court cannot serve as Petitioner's advocate, creating arguments on his behalf. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

[2] Citations to the parties' filings and attached exhibits will refer to this Court's CM/ECF pagination.

(Doc. 17). For the reasons set forth below, the undersigned recommends that the Court **GRANT** the Petition and order Petitioner's **immediate release** subject to the conditions of his prior Order of Supervision. Petitioner's motion for an extension of time is **denied as moot**.

## I. Factual Background

The relevant facts in this matter are as follows:

- Petitioner is a citizen of Cuba who was admitted to the United States as a lawful permanent resident on June 20, 2006. (Doc. 11, at Ex. 1, at 3).

- On July 15, 2019, ICE took Petitioner into custody and issued a Notice to Appear. (*Id*. at 2-3; Doc. 16, at 2).

- On August 6, 2019, an immigration judge ordered Petitioner removed to Cuba. (Doc. 11, at Ex. 1, at 2). Petitioner did not appeal, (Doc. 6, at 5), and Respondents state that the order became administratively final on August 8, 2019, (Doc. 16, at 1).

- On January 29, 2020, ICE released Petitioner on an Order of Supervision ("OOS"). (Doc. 16, at 2). ICE's custody records describe the release as "Released - Order of Supervision - No SLRRFF," a reference to a determination that there was no significant likelihood of removal in the reasonably foreseeable future. (*Id.*)

- On August 19, 2024, ICE detained Petitioner in Phoenix, Arizona, and released him the same day, again on an Order of Supervision designated "No SLRRFF." (*Id.*)

- On October 26, 2025, ICE lodged a detainer after police in Kaufman, Texas, arrested Petitioner on a warrant for engaging in organized criminal activity. (Doc. 11, at Ex. 1, at 2).

- On April 24, 2026, ICE took Petitioner into custody. (Doc. 11, at Ex. 1, at 2-3; Doc. 16, at 2). That day, ICE served him with a Form I-294 Warning to Alien Ordered Removed or Deported and a notice that his custody status would be reviewed on or about June 24, 2026. (Doc. 16, at 2-3; *id.* at Ex. 1,

at 1, 3). Respondents report that Petitioner's A-file "does not appear to contain a notice of revocation of release." (Doc. 16, at 2).

- On April 28, 2026, ICE served Petitioner with a Notice of Removal stating that ICE intends to remove him to Mexico. (*Id.* at Ex. 1, at 2).

- Petitioner alleges that ICE transported him to the border without travel documents or proof that Mexico would accept him, and that, as a result, Mexican authorities did not admit him. (Doc. 6, at 8-9; Doc. 12, at 5-6, 12). Respondents do not dispute this account. ICE's most recent update, from September 22, 2026, claims that Petitioner "failed to comply with third country removal." (Doc. 16, at 2).

- Petitioner is detained at Diamondback Correctional Facility in Watonga, Oklahoma. (*Id.* at 1).

## II. Petitioner's Claims and Respondents' Responses

Petitioner raises four grounds for relief:

1. His post-removal-order detention violates due process under *Zadvydas v. Davis*, 533 U.S. 678 (2001), because there is no significant likelihood of his removal in the reasonably foreseeable future. (Doc. 6, at 7).

2. ICE re-detained him without properly revoking his Order of Supervision, in violation of agency regulations, the *Accardi* doctrine, and due process. (*Id.*)

3. His detention is arbitrary because ICE did not provide a contemporaneous custody decision explaining why detention was necessary. (*Id.*)

4. Respondents have not shown a significant likelihood of removal in the reasonably foreseeable future, particularly after the failed attempt to remove him to Mexico. (*Id.* at 8).

As relief, Petitioner requests immediate release under appropriate conditions of supervision. (*Id.*) In his Reply, Petitioner also asks for declaratory relief and an order that any future re-detention comply with the governing regulations. (Doc. 12, at 11-12).

Respondents argue only that Petitioner's *Zadvydas* claim is premature because his detention began on April 24, 2026, and he filed this action on June 22, 2026, before he had been re-detained for six months. (Doc. 11, at 1-3). The Response does not address Petitioner's claim that ICE revoked his release without following its regulations.

## III. Standard of Review

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

## IV. Legal Framework for the Detention and Release of Noncitizens Subject to a Final Order of Removal

When a non-citizen is ordered removed, 8 U.S.C. § 1231(a) provides a 90-day "removal period" for the government to accomplish removal, during which detention is mandatory. 8 U.S.C. § 1231(a)(1)(A), (a)(2). The removal period begins on the latest of: (1) the date the order of removal becomes administratively final; (2) the date of a reviewing court's final order if the court stays removal; or (3) the date the non-citizen is released from non-immigration detention or confinement. *Id.* § 1231(a)(1)(B). If the noncitizen is not removed within the removal period, he ordinarily "shall be [released] subject to supervision." *Id.* § 1231(a)(3). The government may, however, continue to detain certain non-citizens beyond the removal period. *Id.* § 1231(a)(6); *see Zadvydas*, 533 U.S. at 682; *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578-79 (2022).

In *Zadvydas*, the Supreme Court held that § 1231(a)(6), "read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." 533 U.S. at 689. Thus, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. The Court recognized a six-month period of presumptively reasonable detention. *Id.* at 701; *see also Morales-Fernandez v. INS*, 418 F.3d 1116, 1123 (10th Cir. 2005).

After *Zadvydas*, the agency adopted 8 C.F.R. § 241.13, which establishes "special review procedures" that apply when there is no significant likelihood of the non-citizen's removal in the reasonably foreseeable future. 8 C.F.R. § 241.13(a); *see Abedi v. Carter*, ___ F.4th ___, No. 25-3179, 2026 WL 3149141, at *14-15 (10th Cir. Oct. 21, 2026) (distinguishing § 241.13 from the general custody review procedures of 8 C.F.R. § 241.4). When ICE makes that determination, it must release the non-citizen under an order of supervision. 8 C.F.R. § 241.13(g)-(h). A release granted under § 241.13 "could be revoked only under the process established in § 241.13(i)." *Abedi*, 2026 WL 3149141, at *17.

**V. ICE Did Not Follow Its Regulations When It Revoked Petitioner's Release.**

In administrative law, it is a bedrock principle that an agency must adhere to its own regulations. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954). Nor may an agency evade that duty through inaction, for "an agency's obligation to comply with its own regulations cannot be discharged by silence." *Wonsehleay v. Mullin*, No. CIV-26-1226-HE, 2026 WL 2519454, at *5 (W.D. Okla. Aug. 26, 2026), *adopted*, 2026 WL 2662005 (W.D. Okla. Sept. 9, 2026). The Due Process Clause is likewise implicated where

"an individual has reasonably relied on agency regulations promulgated for his guidance or benefit and has suffered substantially because of their violation by the agency." *United States v. Caceres*, 440 U.S. 741, 752-53 (1979).

**A. Petitioner Was Released Under § 241.13.**

Respondents did not respond to Ground Two, which alleges that Respondents violated ICE regulations in revoking Petitioner's OOS. (*See* Doc. 11). Although the Court directed Respondents to provide any evidence that Petitioner's release was properly revoked, (Doc. 15), their supplemental response does not explicitly identify the regulation under which Petitioner was released or re-detained. (*See* Doc. 16). The record nonetheless makes plain that § 241.13 governed Petitioner's release. Indeed, ICE's own custody records characterize both of Petitioner's releases as "Released - Order of Supervision - No SLRRFF." (Doc. 16, at 2). Like the release in *Abedi*, which was based on officials having "been unable to remove [the non-citizen] from the United States," Petitioner's prior releases were predicated on the unlikelihood of his removal rather than on findings under the general post-removal-period release provision of § 241.4. *See Abedi*, 2026 WL 3149141, at *17; *see also Zaidi v. Blanche*, No. CIV-26-1487-HE, 2026 WL 3270033, at *4 (W.D. Okla. Oct. 19, 2026) (concluding that § 241.13 governed the petitioner's release where ICE released him after it was unable to obtain travel documents for his removal), *adopted*, 2026 WL 3274520 (W.D. Okla. Oct. 30, 2026). Petitioner's release therefore "could be revoked only under the process established in § 241.13(i)." *Abedi*, 2026 WL 3149141, at *17.

**B. Respondents Have Not Identified Changed Circumstances Under § 241.13(i)(2).**

Section 241.13(i)(2) permits ICE to revoke a release granted under § 241.13 only if, "on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). This provision supplies the mechanism through which ICE may revisit its earlier determination that the non-citizen is unlikely to be removed. *Abedi*, 2026 WL 3149141, at *17. Petitioner contends that nothing has transpired to render his removal to Cuba significantly likely. (Doc. 12, at 2-8). Respondents, who bear the burden on this point, have identified neither such a determination nor any changed circumstance. *See Pham v. Bondi*, No. CIV-25-1157-SLP, 2025 WL 3243870, at *2 (W.D. Okla. Nov. 20, 2025) (holding that the government bears the burden "to establish a significant likelihood of removal in the reasonably foreseeable future in the context of re-detention under § 241.13(i)(2)"); *Wonsehleay*, No. CIV-26-1226-HE, 2026 WL 2519454, at *5 (explaining that § 241.13(i)(2) "contemplates an individualized determination made by the agency as the predicate for revocation, not a rationale assembled in litigation"); *see also Kong v. United States*, 62 F.4th 608, 619-20 (1st Cir. 2023) (finding that ICE bore the burden to show that a significant likelihood of removal existed at the time of re-detention).

The record is devoid of a Cuban travel document, and nothing in it suggests that Cuba has agreed to accept Petitioner. Petitioner's I-213 states that he "will remain in ICE custody pending removal to Cuba," (Doc. 11, at Ex. 1, at 38), but a bare statement of ICE's intent to remove him is insufficient for ICE to carry its burden to establish Petitioner's

removal has become significantly likely on account of changed circumstances. In making that determination, ICE must consider, among other things, the non-citizen's history of compliance, the government's prior efforts to remove him, and the views of the Department of State regarding the prospects for removal. *See* 8 C.F.R. § 241.13(f); *Wonsehleay*, No. CIV-26-1226-HE, 2026 WL 2519454, at *5. Nothing in the record reflects that ICE weighed any of these considerations before re-detaining Petitioner.

Further, the undersigned is not persuaded that ICE's alleged attempt to remove Petitioner to Mexico constitutes the change in circumstances needed to justify his re-detention. ICE served the notice of its intent to remove Petitioner to Mexico four days after re-detaining him, (Doc. 16, at Ex. 1, at 2), and the record therefore does not establish that a contemplated third-country removal prompted the revocation. "A determination that must exist at the time of revocation cannot be supplied by efforts undertaken weeks or months after the fact." *Majmaie v. Mullin*, No. CIV-26-1035-D, 2026 WL 1999252, at *4 (W.D. Okla. July 10, 2026), *adopted*, 2026 WL 2255074 (W.D. Okla. Aug. 5, 2026); *see Wonsehleay*, No. CIV-26-1226-HE, 2026 WL 2519454, at *5 (finding no changed-circumstances determination where ICE did not request a travel document until thirty days after re-detention); *Zaidi*, No. CIV-26-1487-HE, 2026 WL 3270033, at *5 (finding no changed circumstances where the government's prior efforts to obtain travel documents had failed and it did "not explain what has changed as to Petitioner"). Regardless, that effort proved unsuccessful. Respondents likewise do not contend that Petitioner violated a condition of his release, which would be a separate basis for revocation under

§ 241.13(i)(1).[3] The undersigned declines to supply a justification that Respondents themselves have not offered. Thus, Respondents failed to follow their own regulations requiring justification to revoke an OOS. *See Wonsehleay*, No. CIV-26-1226-HE, 2026 WL 2662005, at *1 (adopting report and recommendation and granting habeas relief where respondents did not show that the petitioner violated a condition of his release under § 241.13(i)(1) or changed circumstances as required by § 241.13(i)(2)).

**C. Respondents Did Not Provide Notice or a Prompt Informal Interview Under § 241.13(i)(3).**

Independent of these substantive prerequisites, § 241.13(i)(3) mandates that, "[u]pon revocation, the alien will be notified of the reasons for revocation of his or her release," and that ICE "conduct an initial informal interview promptly after his or her return to [ICE] custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3). These requirements apply to any revocation under § 241.13(i), whether it is based on a violation of release conditions or on changed circumstances. *Tran v. Blanche*, No. CIV-25-1357-G, 2026 WL 1181700, at *2 (W.D. Okla. Apr. 30, 2026) (explaining that revocation "for either reason triggers a notification requirement and a review process").

Respondents failed to provide Petitioner notice of the reasons for revocation. When the Court directed Respondents to address whether Petitioner received notice and an

[3] Petitioner's I-213 reflects that ICE lodged a detainer after he was arrested on a state charge of engaging in organized criminal activity. (Doc. 11, at Ex. 1, at 2-3). However, Respondents have not argued that this arrest violated a condition of Petitioner's Order of Supervision, and the Order of Supervision is not in the record.

interview, (Doc. 15), Respondents candidly acknowledged that Petitioner's A-file "does not appear to contain a notice of revocation of release." (Doc. 16, at 2). Nor do the documents ICE furnished Petitioner on April 24, 2026, fill that void. On that date, ICE provided Petitioner with a Form I-294, which warns him of the legal consequences of returning to the United States after removal, and the Notice to Alien of File Custody Review advises him that his custody status would be reviewed on or about June 24, 2026. (*Id.* at Ex. 1, at 1, 3). Neither document states any reason for revoking Petitioner's release and thus they do not satisfy § 241.13(i)(3). *See Zaidi*, No. CIV-26-1487-HE, 2026 WL 3270033, at *4 (holding that a document that "does not identify the reasons for revocation" does not satisfy § 241.13(i)(3)); *Bui v. Bondi*, No. CIV-26-91-J, 2026 WL 788947, at *3 (W.D. Okla. Mar. 20, 2026) (explaining that § 241.13(i)(3) "requires not just notice, but notice that specifies 'the reason for revocation of his or her release'"); *Wonsehleay*, No. CIV-26-1226-HE, 2026 WL 2519454, at *5 (explaining that the reasons for revocation "cannot be conclusory" and that "ICE must identify the specific facts supporting its decision"); *Alizadeh v. Mullin*, No. CIV-26-1316-HE, 2026 WL 2280713, at *3 (W.D. Okla. Aug. 7, 2026) (finding inadequate notice where the officer's declaration did "not state Petitioner received notice or an interview when taken into custody"), *adopted*, 2026 WL 2388908 (W.D. Okla. Aug. 17, 2026).

Respondents likewise failed to afford Petitioner a prompt informal interview. The regulation does not define "promptly," but the Tenth Circuit has given the term its ordinary meaning of "without delay" or "very quickly or immediately." *Abedi*, 2026 WL 3149141, at *19 (quotation omitted). In so holding, the Court drew guidance from the Supreme

Court's forty-eight-hour standard for prompt probable cause determinations, and it faulted the government for failing to explain why it could not have interviewed the non-citizen "within the four weeks that elapsed before he filed his habeas petition." *Id.* at *19-21 (citing *County of Riverside v. McLaughlin*, 500 U.S. 44, 56-57 (1991)). A file custody review scheduled two months after Petitioner's re-detention is not the "initial informal interview" that § 241.13(i)(3) requires, and the record does not even reflect that the review occurred. *See Majmaie*, No. CIV-26-1035-D, 2026 WL 1999252, at *5 ("A custody review conducted months later, directed at the separate question of continued detention, is not that interview."); *Bui*, No. CIV-26-91-J, 2026 WL 788947, at *3 (holding that such "substituted notice" "is not sufficient under § 241.13(i)(3)"). Respondents do not contend that Petitioner ever received an informal interview, and more than six months have now elapsed since his return to custody. In *Abedi*, a delay of that length "easily establishe[d]" that the government did not promptly conduct the interview. *Id.* at *18, *21; *see also Wonsehleay*, No. CIV-26-1226-HE, 2026 WL 2662005, at *1 (granting habeas relief where respondents did not follow the notice and informal interview requirements of § 241.13(i)(3)). Thus, the undersigned finds that Respondents have also violated § 241.13(i)(3).

**D. Respondents' Regulatory Violations Entitle Petitioner to Habeas Relief.**

In *Abedi*, the Tenth Circuit set forth the test for determining whether the government's failure to follow its own regulations entitles a non-citizen to relief. "When an agency fails to comply with regulations that establish procedural protections for individuals, this failure may constitute *per se* prejudice, negating the need for the plaintiff to make any additional showing of prejudice to be entitled to relief." *Abedi*, 2026 WL

3149141, at *22 (citing *Accardi*, 347 U.S. at 266-68). Not every regulation is of that nature. *Id.* at *23. But "when an agency promulgates a regulation protecting fundamental statutory or constitutional rights of parties appearing before it, the agency must comply with that regulation," and "[f]ailure to comply will merit invalidation of the challenged agency action without regard to whether the alleged violation has substantially prejudiced the complaining party." *Id.* (quoting *Leslie v. Att'y Gen. of U.S.*, 611 F.3d 171, 180 (3d Cir. 2010)); *see also Caceres*, 440 U.S. at 749 ("A court's duty to enforce an agency regulation is most evident when compliance with the regulation is mandated by the Constitution or federal law.").

Applying that test, the Tenth Circuit held that § 241.13(i) is such a regulation. The government's failure to follow its procedures "involve[d] more than mere . . . procedural irregularities" and was instead a failure to comply with "a regulation protecting fundamental statutory or constitutional rights of parties appearing before it." *Abedi*, 2026 WL 3149141, at *24 (first quoting *Vitarelli v. Seaton*, 359 U.S. 535, 540 (1959); and then quoting *Leslie*, 611 F.3d at 180). The violation therefore "merit[ed] invalidation of the challenged agency action without regard to whether the alleged violation has substantially prejudiced [the non-citizen]." *Id.* (quoting *Leslie*, 611 F.3d at 180). The court further held that, even if the violation were not *per se* prejudicial, the non-citizen was prejudiced in fact "because he was held for months in detention without the ability to contest the basis for his detention or to otherwise be heard," and "[t]he lack of process was itself an injury." *Id.* Nor did the availability of habeas review cure the violation, because the possibility of habeas review "cannot conceivably cure the harm caused by the agency's failure to

'promptly' provide the noncitizen with the immediate administrative due process required by this regulation." *Id.* Holding otherwise "would convert protective regulations into aspirational suggestions and would incentivize noncompliance by shifting the burden and cost of the process to federal courts and incarcerated petitioners." *Id.* at *25 (quotation omitted).

Measured against that standard, Petitioner is indisputably entitled to relief. As in *Abedi*, ICE revoked a release granted under § 241.13 without complying with § 241.13(i). ICE did not identify any changed circumstances or give Petitioner notice of the reasons for revoking his release or an opportunity to respond to them. The violation is therefore prejudicial *per se*, and Petitioner need not make any additional showing. *See Abedi*, 2026 WL 3149141, at *24; *Thabata v. Blanche*, No. CIV-26-531-J, 2026 WL 1397059 (W.D. Okla. May 19, 2026), *adopted*, 2026 WL 1495209, at *2 (W.D. Okla. May 28, 2026) ("[T]he harmless error doctrine does not apply here," because "regulatory violations under § 241.13 implicate due process concerns even without a prejudice inquiry.") (quoting *Owdetallah v. Bondi*, No. CIV-25-1546-SLP, 2026 WL 483648, at *4-6 (W.D. Okla. Feb. 20, 2026)). Even setting aside *per se* prejudice, Petitioner has suffered actual prejudice. He has now been detained for more than six months, and he was "denied a meaningful opportunity, at a meaningful time, to contest the revocation of his release." *Bui*, No. CIV-26-91-J, 2026 WL 788947, at *3; *see Abedi*, 2026 WL 3149141, at *24. That Petitioner has since secured review in this Court does not alter the analysis. *See Abedi*, 2026 WL 3149141, at *24-25.

Because ICE revoked Petitioner's release without complying with § 241.13(i), the revocation is invalid, and Petitioner is in custody in violation of the laws of the United States and he is entitled to release. 28 U.S.C. § 2241(c)(3); *see Abedi*, 2026 WL 3149141, at *24 (citing *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 166 (W.D.N.Y. 2025) ("[B]ecause ICE did not follow its own regulations in deciding to re-detain Ceesay, his due process rights were violated, and he is entitled to release.")); *see also Bassam v. Grant*, No. CIV-26-657-D, 2026 WL 1832382, at *3 (W.D. Okla. June 26, 2026) ("ICE's failure to abide by its own regulations in making the decision to revoke Petitioner's OOS renders the revocation unlawful, and . . . his release is therefore appropriate under 28 U.S.C. § 2241(c)(3)."); *Khaliq v. Noem*, No. CIV-25-1154-SLP, 2026 WL 196631, at *10 (W.D. Okla. Jan. 26, 2026); *Tran*, No. CIV-25-1357-G, 2026 WL 1181700, at *3; *Zaidi*, No. CIV-26-1487-HE, 2026 WL 3270033, at *6 (collecting cases).

## VI. Petitioner Is Also Entitled to Relief Under *Zadvydas.*

### A. Petitioner's *Zadvydas* Claim Is Not Premature.

Respondents argue that Petitioner's *Zadvydas* claim is premature because he had been re-detained for less than six months when he filed this action. (Doc. 11, at 1-3). The Tenth Circuit has since foreclosed the premise of that argument. In *Abedi*, the court considered three approaches to calculating the six-month period of presumptively reasonable detention, which focus on "(1) only the time spent in the most recent period of detention (the 'latest detention' approach); (2) the time spent in the most recent period of detention plus any time previously spent in detention (the 'aggregated detention' approach);" and (3) the time that has elapsed since the removal period was triggered.

*Abedi*, 2026 WL 3149141, at *26 (quotation omitted). The court rejected the latest detention approach on which Respondents rely and held "that *Zadvydas*'s six-month presumption applies only to the first six months that elapse after the removal period is triggered." *Id.* After that period, "[t]he government is simply no longer entitled to a presumption of reasonableness," and the court "must conduct a case-specific analysis to conclude whether the detention meets the *Zadvydas* reasonableness standard absent this presumption." *Id.* at *28.

Petitioner's removal order became administratively final on August 8, 2019, (Doc. 16, at 1), and nothing in the record suggests that a later event triggered his removal period, *see* 8 U.S.C. § 1231(a)(1)(B). The six-month presumptive period therefore expired in February 2020, more than six years before ICE re-detained Petitioner. Respondents' prematurity argument is accordingly unavailing.

**B. There Is No Significant Likelihood of Petitioner's Removal in the Reasonably Foreseeable Future.**

Absent the presumption, the dispositive question is whether Petitioner's detention is "within, or beyond, a period reasonably necessary to secure removal." *Zadvydas*, 533 U.S. at 699. Petitioner bears the initial burden to "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," and if he does, "the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701. To meet his initial burden, a petitioner "must demonstrate the existence of either institutional barriers to repatriation or obstacles particular to his removal." *Dusabe v. Jones*, No. CIV-24-464-SLP, 2024 WL 5465749, at *3 (W.D. Okla. Aug. 27, 2024),

*adopted*, 2025 WL 486679 (W.D. Okla. Feb. 13, 2025); *see also Gomez v. Mattos*, No. 25-CV-00975-GMN-BNW, 2025 WL 3101994, at *5 (D. Nev. Nov. 6, 2025) (finding the initial burden met where the petitioner identified a barrier to repatriation and "ICE ha[d] not identified a third country that will accept him"). And "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Zadvydas*, 533 U.S. at 701.

Petitioner has carried his initial burden. ICE twice released him after determining that there was no significant likelihood of his removal in the reasonably foreseeable future, first in January 2020 and again in August 2024. (Doc. 16, at 2). More than seven years after his removal order became final, the record does not contain a travel document from Cuba, a request for one, or any indication that Cuba has agreed to accept him. *See Thabata*, No. CIV-26-531-J, 2026 WL 1495209, at *2 ("[S]uch prolonged silence reinforces that removal is not significantly likely in the reasonably foreseeable future."). ICE instead tried to remove Petitioner to Mexico, and Petitioner attests (and Respondents do not contest) that Mexican authorities refused to admit him because he lacked travel documents. (Doc. 6, at 8-9; Doc. 12, at 5-6, 12). Taken together, these facts furnish "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. *See Zaidi*, No. CIV-26-1487-HE, 2026 WL 3270033, at *7 (finding the initial burden met where the petitioner's country had not issued travel documents in nearly two decades and had not confirmed his identity or nationality more than nine months into his renewed detention).

Respondents have failed to rebut that showing. Although the Court directed them to submit any evidence of the likelihood of Petitioner's removal, (Doc. 15), Respondents offered only that the most recent update "reflects that Enforcement and Removal Operations (ERO) noted the subject failed to comply with third country removal." (Doc. 16, at 2). Respondents have not made that argument or explained what Petitioner did or failed to do to obstruct his removal to Mexico. The record shows only that Petitioner refused to sign the Notice of Removal, (Doc. 16, at Ex. 1, at 2), and Petitioner attests that Mexico refused to admit him because he lacked travel documents, (Doc. 12, at 5-6, 12). Respondents have not shown that Petitioner's conduct, rather than Mexico's refusal, prevented his removal.

Moreover, Respondents do not identify any country that has agreed to accept Petitioner, any pending travel document request, or any timeline for removal. *See Zaidi*, No. CIV-26-1487-HE, 2026 WL 3270033, at *7 (finding the government's response insufficient where it offered only removal statistics and its declarant's assurance that it "remains confident" that travel documents would issue); *Hamidi v. Bondi*, No. CIV-25-1205-G, 2025 WL 3452454, at *4 (W.D. Okla. Dec. 1, 2025) (rejecting declarations that did not identify any country that had agreed to accept the petitioner); *Bui*, No. CIV-26-91-J, 2026 WL 788947, at *5 (explaining that the government must offer more than "generalized evidence"). The only other evidence bearing on this question is the I-213's statement that Petitioner "will remain in ICE custody pending removal to Cuba." (Doc. 11, at Ex. 1, at 38). An abstract intention to remove Petitioner at some indeterminate point is not evidence that his removal is significantly likely in the reasonably foreseeable future.

Because the record does not show that Petitioner's removal is reasonably foreseeable, his continued detention is "unreasonable and no longer authorized by statute." *Zadvydas*, 533 U.S. at 699-700. Nor does Petitioner's criminal history alter this conclusion, because the risk that a non-citizen will commit further crimes is a factor the Court considers only "if removal is reasonably foreseeable." *Id.* at 700.

**VII. Remedy**

Each of these violations independently warrants Petitioner's release. *See Zaidi*, No. CIV-26-1487-HE, 2026 WL 3270033, at *6-7 (finding that the petitioner was entitled to relief under § 241.13(i) and, independently, under *Zadvydas*). Because ICE revoked Petitioner's release without complying with § 241.13(i), the revocation should be invalidated and Petitioner returned to supervision. *See Abedi*, 2026 WL 3149141, at *24. And because Petitioner's removal is not reasonably foreseeable, his continued detention is not authorized by § 1231(a)(6), and he must be released under supervision. *Zadvydas*, 533 U.S. at 699-700; 8 U.S.C. § 1231(a)(3); *see also Wonsehleay*, No. CIV-26-1226-HE, 2026 WL 2662005, at *1 (ordering the petitioner's immediate release "subject to an appropriate order of supervision" after finding violations of § 241.13(i)); *Zaidi*, No. CIV-26-1487-HE, 2026 WL 3274520, at *1 (ordering release "subject to an appropriate Order of Supervision"); *Alizadeh*, No. CIV-26-1316-HE, 2026 WL 2388908, at *2 (ordering release "within three (3) business days of the date of this order, subject to an appropriate order of supervision"). Petitioner's release may be subject to the conditions of his prior Order of Supervision or other appropriate conditions, and he may be returned to custody upon a violation of those conditions. *See Zadvydas*, 533 U.S. at 696, 700 ("The choice . . . is not

between imprisonment and the alien 'living at large.' It is between imprisonment and supervision under release conditions that may not be violated."). Nothing in this recommendation precludes Respondents from revoking Petitioner's release in the future in compliance with § 241.13(i) and *Zadvydas*.

Because the undersigned recommends granting habeas relief on these grounds, the undersigned need not reach Ground Three, particularly as it would not afford Petitioner greater relief. *See Wonsehleay*, No. CIV-26-1226-HE, 2026 WL 2519454, at *7; *Majmaie*, No. CIV-26-1035-D, 2026 WL 2255074, at *2 n.1.

## VIII. Recommendation and Notice of Right to Object

For the reasons discussed above, the undersigned recommends that the Petition, (Doc. 6), be **GRANTED**. The undersigned recommends that the Court order Respondents:

- **to release Petitioner from custody immediately**, subject to an appropriate OOS;
- to certify compliance by filing a status report within three business days of the Court's order; and
- to comply with all applicable laws and regulations before any future re-detention of Petitioner, including any applicable exercises of discretion, notice, and opportunity to be heard.

**The Court advises the parties of their right to object to this Report and Recommendation by November 17, 2026**, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ.

P. 72(b)(2).[4] The Court advises the parties that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge and terminates the referral unless and until the matter is re-referred.

**ENTERED** this 10th day of November, 2026.

Amanda L. Maxfield

AMANDA L. MAXFIELD
UNITED STATES MAGISTRATE JUDGE

[4] Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to Report and Recommendations. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) ("The Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process.").